*Dupree, Johnson & Poole, Hylton B. Dupree, Jr., Mark A. Johnson*, for appellee.

A93A0095. SO et al. v. LEDBETTER.
(434 SE2d 517)

BIRDSONG, Presiding Judge.

This consolidated discretionary appeal was granted to review the judgment of the superior court affirming the decisions of the Commissioner of the Department of Human Resources ("DHR") disqualifying Young Sun So d/b/a Alex Supermarket, vendor no. 2416; Young Chi Ahn d/b/a Dixie Hill Supermarket, vendor no. 2514; Seung Sup Chi d/b/a Shopper's Market #3, vendor no. 2496; Chang K. Kwak d/b/a Stan's Market, vendor no. 2443; and Kye W. Lee d/b/a Family Supermarket, vendor no. 2267 from participating in the Women, Infants,

and Children Program ("WIC") for a period of 540 days because they were found to have violated their WIC vendor agreements by overcharging on WIC food vouchers. All appellants are Korean immigrants who speak English as a second language, and are owners or managers of grocery stores in Fulton County, Georgia, that participated in the WIC program as food vendors.

WIC is a program of the U. S. Department of Agriculture ("USDA") authorized under the Child Nutrition Act of 1966 (42 USC § 1786 et seq.) to assist women, infants, and children from families with inadequate income with supplemental food and nutrition education through grants to state agencies. In practice, eligible participants in the WIC program receive WIC vouchers which are used to obtain food specified on the approved food list (milk, juice, cereal, etc.) from vendors who are approved to participate in the WIC program. WIC vouchers are given to the vendors to pay for food as if they were checks and the vouchers are processed through the banking system for payment. Vouchers are valid only for foods on the WIC food list and must be countersigned by the participants for the food items set forth on the voucher in the amounts and prices stated on the vouchers when food is obtained from the vendors.

The WIC program is funded fully by the federal government, but under 7 Code of Federal Regulation ("CFR") § 246.3 (b), USDA has delegated administration of the program to the states. In Georgia, administration of the program was delegated to DHR and USDA requires DHR to monitor food vendors in the program and to establish policies for imposing sanctions against vendors for violating the program rules. 7 CFR § 246.12 (i) and (k).

Before being allowed to participate as WIC food vendors, appellants executed agreements with DHR which contained the terms and conditions under which they would participate in the program. Among other provisions, each appellant agreed that the actual cost of the WIC foods sold would be entered on the WIC vouchers. The vendors also agreed to send representatives to training sessions on the WIC program and to train their employees on the operation of the program. Moreover, the vendors agreed to abide by all WIC rules and regulations, to follow the WIC vendor handbook, and to be accountable for their employees' actions in using WIC vouchers.

The vendors or their representatives attended training on the operation of the program, including processing WIC vouchers, monitoring by state WIC offices for compliance with the program, and sanctions for violations. At the request of the Korean Grocer's Association, two additional training sessions were conducted with a Korean interpreter present.

DHR, operating through the state WIC office, monitors WIC vendors through computer monitoring and through investigators who

purchase food with WIC vouchers and then compare the actual prices of the items in the stores with the amounts ultimately charged the WIC program for the items on the WIC vouchers submitted by vendors for these purchases. Further, although not required to do so, before making such compliance visits the state WIC office sends letters to the vendors alerting them that investigators would visit their stores and requesting that they review the vendor handbook and assure that their staffs were properly trained.

In these appeals, the WIC office sent the notification letters to appellants on May 22, 1990, and the compliance visits that detected the overcharges were made in June and July 1990. Subsequently, in December 1990, the WIC office notified each vendor of the results of the compliance visits. Appellants do not dispute that the compliance visits resulted in discovery of overcharges, and that there were three overcharges per vendor that ranged from a high of $12.35 to a low of $.49 and the average overcharge was $5 per voucher. They also do not dispute that the state WIC office notified each vendor of the violations, advised each vendor that the sanction would be suspension from the program for 540 days, and advised the vendor of his appellate rights. The vendors appealed the initial decisions to a DHR hearing examiner, and after receiving adverse decisions, appealed to the Commissioner of DHR. Following adverse decisions by the Commissioner, the vendors next appealed to the superior court.

When the superior court affirmed the Commissioner's decisions, the vendors applied for and received authority to appeal the superior court's judgments. See OCGA § 5-6-35 (a) (1). The vendors enumerate five errors: (1) that the state WIC office exceeded its statutory authority by adopting rules and regulations for the WIC program without holding public hearing; (2) that the state WIC office failed to follow federal law by adopting the state agency plan without providing to the general public an opportunity to comment on the plan's development; (3) that contrary to federal law, DHR failed to consider whether disqualification of vendors would create a hardship for participants in the WIC program; (4) that disqualification of these vendors was arbitrary and capricious and accomplished under rules and regulations which violated federal law; and (5) that the vendors were disqualified under rules and regulations which are unintelligible. *Held*:

1. The vendors' first enumeration of error is based upon the contention that under OCGA § 31-5-1 a public hearing was required before DHR adopted the WIC vendor handbook. We find this contention to be without merit. Although Title 31 is applicable to "services" provided by DHR, WIC is not a service of DHR; therefore, Title 31 is inapplicable to the WIC program. Nevertheless, it does not follow that DHR is completely exempt from the requirement for public com-

ment on its WIC regulations. WIC is a form of public assistance (see *Dix v. State*, 156 Ga. App. 868, 869 (275 SE2d 807)) provided under the Georgia Public Assistance Act, OCGA § 49-4-1 et seq. Thus, although OCGA § 49-2-11 (c) authorizes DHR to promulgate rules and regulations for the WIC program, under the Georgia Administrative Procedures Act ("APA"), OCGA § 50-13-3 et seq., DHR's rules and regulations concerning the operation of the WIC program must be published and made available for public inspection. Contrary to DHR's argument that it is exempt from these procedures also because rules concerning grants and benefits are not subject to these requirements of the APA (see OCGA § 50-13-2 (6) (I)), the vendor handbook does not concern "loans, grants, and benefits" within the meaning of OCGA § 50-13-2 (6) (I) since the handbook is not concerned with establishing criteria for receiving grants or benefits. Instead, the handbook addresses the operations of WIC vendors. Therefore, the vendor handbook is subject to the publication and inspection requirements of OCGA § 50-13-3 (a). Nevertheless, as appellants all had actual knowledge of the rules and regulations in question, these rules and regulations are valid and effective against them. OCGA § 50-13-3 (b). Accordingly, this enumeration of error is without merit.

2. Next, appellants contend DHR failed to comply with the federal requirement that members of the general public "*shall*" be given the "opportunity to comment on the development of the State Agency Plan." 42 USC § 1786; 7 CFR 246.4 (b). A state agency plan must include a system for monitoring food dollars to ensure compliance and to prevent fraud, waste and abuse. 7 CFR 246.4 (a). DHR contends, however, that it complied with this requirement by providing copies of the plan to advocacy groups, hospitals, health departments, and anyone who previously expressed an interest in receiving a copy. Since these groups plainly do not constitute members of the general public, this procedure does not satisfy the requirements of 42 USC § 1786 and 7 CFR 246.4 (b). Nevertheless, as the appellants had personal knowledge of these requirements the rules and regulations are valid and effective as to them. OCGA § 50-13-3 (3).

3. Additionally, we find the procedures employed by DHR to disqualify appellants were deficient because the procedures are inconsistent with the requirement of 7 CFR 246.12 (k) that the sanctions taken against a vendor consider the circumstances of the violation: "The State agency shall establish policies which determine the type and level of sanctions to be applied against food vendors, based upon the severity and nature of the Program violations observed, and such other factors as the State agency determines appropriate, such as whether the violation represented repeated offenses over a period of time, whether the offenses represented vendor policy or whether they represented the actions of an individual employee who did not under-

stand Program rules, and whether prior warning and an opportunity for correction was provided to the vendor." The record shows that DHR's procedures considered only whether overcharging had occurred and not "the severity and nature of the program violations observed." Thus, a single inadvertent $.50 overcharge would require the same sanction as multiple intentional overcharges. Moreover, the procedures did not allow for consideration of whether disqualification of a vendor would create an undue hardship on participants. See 7 CFR § 246.12 (k) (1) (v). As the DHR hearing examiner stated in his reports that the DHR vendor handbook did not allow consideration of mitigating factors because there was no provision of lesser penalties, the hearing examiner's conclusions were contrary to the federal law controlling the WIC program. Therefore, the findings and recommendation of the hearing examiner and the decision by the Commissioner were made upon unlawful procedure and the judgment of the superior court affirming the administrative decision must be reversed. OCGA § 50-13-19 (h) (3).

4. Although portions of the WIC vendor handbook are not models of clarity, we find no merit to appellants' assertion that the handbook was unintelligible. The record demonstrates that any overcharging was not the result of confusion about the definition of "overcharging" in the handbook.

Accordingly, the judgment of the superior court must be reversed and the superior court is directed to remand these appeals to the Commissioner for consideration by a hearing examiner using procedures that are consistent with 7 CFR 246.12 (k).

*Judgment reversed with direction. Pope, C. J., and Andrews, J., concur.*

DECIDED JULY 12, 1993 —
RECONSIDERATION DENIED JULY 28, 1993 —

*Charles M. Hall, Speros D. Homer, Jr.,* for appellants.
*Michael J. Bowers, Attorney General, William C. Joy, Senior Assistant Attorney General, William M. Droze, Assistant Attorney General,* for appellee.