[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I. STATEMENT OF APPEAL
The plaintiff, John Kekilk, appeals from the decision of the defendant, the Connecticut department of public health ("the department"), disqualifying the plaintiff from participation as a vendor in the Connecticut Special Supplemental Nutrition Program for Women, Infants and Children ("WIC program").
 II. BACKGROUND
The plaintiff owns and operates Captain's Food Mart and was a licensed vendor under the WIC program. The WIC program is a supplemental food program for women, infants and children "which is administered by the [d]epartment of [p]ublic [h]ealth in accordance with the United States Department of Agriculture regulations, 7 C.F.R. § 246.1 through246.28, as amended." Regs., Conn. State Agencies § 19a-59c-1 (ccc). As a vendor, the plaintiff was authorized by the state to provide approved food items to WIC participants in exchange for WIC vouchers.
The plaintiff received a letter dated April 17, 1997, notifying him of his disqualification from the WIC program for a period of three years. (See Return of Record [ROR], Volume I, p. 72.) The plaintiff filed a request for a fair hearing dated April 21, 1997; (see ROR, Volume I, p. 76); and filed again through counsel on April 23, 1997; (see ROR, Volume 1, pp. 77-78); as well as a request for a stay of the disqualification. (See ROR, Volume I, pp. 79-80.) The request for a stay was granted. (See ROR, Volume I, p. 81.) A hearing was held before a hearing officer, Stephen Varga, on August 13, 1997. (See ROR, Volume III, p. 1.) The plaintiff made a motion to strike the compliance purchase reports from the hearing record; (see ROR, Volume II, pp. 44-56); which was denied. (See Final decision, ROR, Volume I, pp. 2-6.) A proposed memorandum of decision was issued on December 17, 1997. (See ROR, Volume I, p. 7-14.) The plaintiff filed exceptions to the proposed findings on January 20, 1998; (see ROR, Volume II, pp. 22-30); and presented oral argument on CT Page 4697 January 26, 1998. (See ROR, Volume II, p. 32.) A final decision was issued on June 5, 1998, sustaining the disqualification and dissolving the stay. (See ROR, Volume I, pp. 1-6.) The plaintiff filed a motion for reconsideration; (see ROR, Volume II, pp. 4-6); and an application for a stay of the disqualification; (see ROR, Volume II, pp. 7-14); which were denied. (See ROR, Volume II, p. 1.) The plaintiff now appeals from the decision denying the plaintiff's motion to strike the investigator's reports from the record, sustaining the plaintiff's disqualification and dissolving the stay.
 III. JURISDICTION
General Statutes § 4-183 governs an appeal from the decision of a state agency to the Superior Court. "A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created." Office of Consumer Counsel v.Department of Public Utility Control, 234 Conn. 624, 640, 662 A.2d 1251
(1995).
 A. Aggrievement
"A person . . . who is aggrieved by a final decision may appeal to the Superior Court. . . ." General Statutes § 4-183. "Pleading and proof of aggrievement are prerequisites to a trial court's jurisdiction over the subject matter of an administrative appeal." (Internal quotation marks omitted.) New England Cable Television Association, Inc. v.Department of Public Utility Control, 247 Conn. 95, 103, 717 A.2d 1276
(1998). "Aggrievement is established if there is possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Internal quotation marks omitted.) Id.
In the present appeal, the plaintiff alleges that he has been a WIC vendor at his present location for approximately seven years and at a prior location for four years. He contends that WIC participants constitute a significant portion of his business and the disqualification will cause him to lose approximately one-third of his business. (See ROR, Volume III, p. 62.) Accordingly, the court finds that the plaintiff is aggrieved as required by the statute.
 B. Timeliness and Service of Process
As amended by Public Acts 2000, No. 00-99, General Statutes § 4-183
(c) provides in relevant part: "Within forty-five days after mailing of the final decision under section 4-180 or, if there is no mailing, within forty-five days after personal delivery of the final decision under said section, a person appealing as provided in this section shall serve a CT Page 4698 copy of the appeal on the agency that rendered the final decision at its office or at the office of the Attorney General in Hartford and file the appeal with the clerk of the superior court. . . ." The record contains a copy of the certification of mailing of the defendant's final decision dated June 12, 1998. (See ROR, Volume I, pp. 15-16.) On July 15, 1998, the appeal was filed with the clerk of the Superior Court in the judicial district of Bridgeport.[1] Accordingly, the court finds that this appeal was commenced in a timely manner by service of process upon the proper parties.
 IV. SCOPE OF REVIEW
"Judicial review of [an administrative agency's] action is governed by the [Uniform Administrative Procedures Act (UAPA)] . . . and the scope of that review is very restricted." (Internal quotation marks omitted.)Cadlerock Properties v. Commissioner, 253 Conn. 661, 668, 757 A.2d 1
(2000). "The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." General Statutes § 4-183 (j).
"Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . [T]he trial court may [not] retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. . . . Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion . . . The substantial evidence rule governs judicial review of administrative fact-finding under the UAPA. General Statutes § 4-183 (j)(5) and (6). An administrative finding is supported by substantial evidence if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . The substantial evidence rule imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and to provide a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action. . . . [Slubstantial evidence . . . is something less than the weight of the evidence, and the CT Page 4699 possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." (Citations omitted; internal quotation marks omitted.) Cadlerock Properties v. Commissioner, supra, 253 Conn. 676-77. "The determination of whether substantial evidence exists is subject to de novo review by this court." Labenski v. Goldberg, 33 Conn. App. 727,733, 638 A.2d 614 (1994).
"Judicial review of the conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion . . . Although the interpretation of statutes is ultimately a question of law . . . it is the well established practice of this court to accord great deference to the construction given [a] statute by the agency charged with its enforcement. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts." (Citations omitted; internal quotation marks omitted.) Cadlerock Properties v. Commissioner, supra,253 Conn. 669.
 V. DISCUSSION A. Whether the agency properly admitted the investigator's reports in written form.
The plaintiff argues that General Statutes § 4-178 does not authorize the admission of the investigator's reports because they are substantially prejudicial. He further argues that the reports are insufficiently trustworthy to be relied on as substantial evidence of the plaintiff's violation. The defendant argues, however, that the reports are sufficiently reliable to be considered and that the plaintiff was not prejudiced by their admission because the plaintiff had the opportunity to cross-examine the investigator.
The court first addresses whether the reports were sufficiently trustworthy to be relied on as substantial evidence. In the present case, the investigator's reports are hearsay. "Hearsay is an out-of-court statement offered into evidence to establish the truth of the matters contained therein." (Internal quotation marks omitted.) Pagano v.Ippoliti, 245 Conn. 640, 650, 716 A.2d 848 (1998). The reports were written out of court and were offered into evidence to establish the truth of the statements made therein. Specifically, the reports were offered to prove that the plaintiff made sales that were in violation of the WIC regulations. CT Page 4700
"Hearsay evidence, however, is not, as a matter of law, inadmissable in the hearing." Labenski v. Goldberg, supra, 33 Conn. App. 733. "Under the "substantial evidence' rule, the erroneous admission of evidence will not invalidate an administrative order unless substantial prejudice is affirmatively shown." (Internal quotation marks omitted.) Id., 733-34. "If hearsay evidence is insufficiently trustworthy to be considered `substantial evidence' and it is the only evidence probative of the plaintiff's culpability, its use to support the agency decision would be prejudicial to the plaintiff, absent a showing . . . that the [plaintiff] knew it would be used and failed to ask the commissioner to subpoena the declarants." (Internal quotation marks omitted.) Id., 734.
In reviewing `substantial evidence', the court must first determine the trustworthiness of the hearsay evidence. The investigator testified that she completes handwritten notes of the compliance purchase immediately following the compliance purchase and types her reports when she returns to the office. (See ROR, Volume III, pp. 31-32.) The reports relied on by the defendant in the present case show that the price of the non-food item was added in the narrative portion of the report. (ROR, Volume I, p. 67.) The investigator testified that she made the changes and that the changes were made from her notes. (See ROR, Volume III, p. 33.) Accordingly, the court finds that the record contains sufficient evidence of the trustworthiness of the investigator's reports to constitute substantial evidence.
Although the court finds the reports sufficiently trustworthy, to complete the analysis we must next determine whether the hearsay evidence was the only probative evidence offered as to the plaintiff. At the hearing, the only evidence admitted regarding any WIC violations made by the plaintiff were the reports and testimony of the investigator. The investigator testified that she had no independent recollection of the investigation and could only testify as to the information contained in the reports. Therefore, the court finds that the reports were the only probative evidence offered as to the plaintiff's violations.
Finally, we must determine whether the defendant sufficiently established that the plaintiff knew the reports would be introduced and that the plaintiff failed to request that the declarant be subpoenaed. In the present case, a letter to the plaintiff from the agency dated May 23, 1997, indicated that the record at the hearing would include the compliance reports. (See ROR, Volume I, pp. 18-19.) The plaintiff did subpoena the investigator. (See ROR, Volume I, pp. 91-92.) Furthermore, the investigator appeared at the hearing and was extensively questioned by plaintiff's counsel. (See ROR, Volume III, pp. 9-34.) The court finds that the hearing officer had the opportunity to evaluate the CT Page 4701 trustworthiness of the reports and that the plaintiff had the opportunity to object to such reports. Accordingly, the court finds that the hearing officer was reasonable in determining that the reports were sufficient to constitute substantial evidence of the violations.
The plaintiff also argues that the reports were not properly authenticated. "[A]dministrative tribunals are not strictly bound by the rules of evidence and . . . they may consider evidence which would normally be incompetent in a judicial proceeding, as long as the evidence is reliable and probative." (Internal quotation marks omitted.) Jutkowitzv. Department of Health Services, 220 Conn. 86, 108, 596 A.2d 374
(1991). As stated above, the record contains sufficient evidence supporting the defendant's finding that the reports were reliable and probative.
Finally, the plaintiff argues that admitting the reports into evidence would substantially prejudice the plaintiff. Section 4-178 (3) provides in relevant part: "In contested cases . . . when a hearing will be expedited and the interests of the parties will not be prejudiced substantially, any part of the evidence may be received in written form. . . ." Again, as stated above, the record includes sufficient evidence of trustworthiness to admit the reports. Furthermore, the changes made only repeat evidence contained in other pages of the report. Accordingly, the court finds that admitting the reports in written form did not substantially prejudice the plaintiff.
 B. Whether the agency exceeded its statutory and regulatory authority by delegating compliance purchases to private investigation firms.
The plaintiff argues that the defendant's delegation of compliance purchases to a private investigative firm is beyond the scope of the authority granted to the agency. He argues that, as a result, the investigations that resulted in the charges against the plaintiff were also beyond the scope of the agency's authority and, therefore, void. The plaintiff maintains that the agency is not entitled to deference on the issue of whether the regulations allow the agency to hire private firms to conduct compliance purchases. The defendant argues, to the contrary, that the agency is authorized to contract with private firms. Alternatively, the defendant contends that, even if the court determines such contracts are not authorized, the investigations in this case constitute harmless error and, therefore, the plaintiff's disqualification may not be overturned.
"The standard of review of an agency decision is well established. Ordinarily, this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the CT Page 4702 statute's purposes. . . . [A]n agency's factual and discretionary determinations are to be accorded considerable weight by the courts . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . Furthermore, when a state agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference. . . . [I]t is for the courts, and not administrative agencies, to expound and apply governing principles of law." (Internal quotation marks omitted.) Bell Atlantic Mobile v. Dept. of Public UtilityControl, 253 Conn. 453, 469-70, 754 A.2d 128 (2000).
The applicable federal regulations provide the following. "The State agency shall be responsible for the monitoring of food vendors within its jurisdiction. If the State agency chooses to delegate all or part of this responsibility to local agencies, the State agency shall provide training to local agency staff in effective methods of vendor monitoring." 7 C.F.R. § 12.246.12 (i). "The State agency shall have the capability to conduct compliance purchases to collect evidence of improper vendor practices, or shall arrange for this responsibility to be assumed by the proper State or local authorities." 7 C.F.R. § 246.12 (i)(5). "The State agency shall design and implement a system to conduct on-site monitoring visits. . . ." 7 C.F.R. § 12.246 (i)(2). "All contracts or agreements entered into by the State or local agency for the management or operation of food delivery systems shall be in conformance with the requirements of 7 C.F.R. part 3016." 7 C.F.R. § 246.12 (a) (4).
Whether an agency is authorized by the federal regulations to contract with private firms to conduct compliance purchases is a question of law. It appears that the issue has not been subject to judicial scrutiny. Therefore, the court must determine whether the federal regulations allow such action.
"Our rules of statutory construction apply to administrative regulations. . . . [I]n the absence of other statutory [or regulatory] guidance, we may appropriately look to the meaning of the word[s] as commonly expressed in the law and in dictionaries." (Citations omitted; internal quotation marks omitted.) Vitti v. Allstate Insurance Company,245 Conn. 169, 178, 713 A.2d 1269 (1998). "When interpreting a statute, courts should accord a statutory enactment its plain meaning. . . . Moreover, the meaning of statutory language must be determined from a reading of the statute as a whole. . . . We may not, by construction, read a provision into legislation that is not clearly stated therein." (Internal quotation marks omitted.) Hyllen-Davey v. Plan ZoningCT Page 4703Commission, 57 Conn. App. 589, 595, 749 A.2d 682, cert. denied,253 Conn. 926, 754 A.2d 796 (2000).
In the present case, the federal regulations require that "[t]he State agency shall be responsible for the monitoring of food vendors. . . ." 7 C.F.R. § 12.246.12 (i)(5). Responsibility is defined as "liability." Black's Law Dictionary, pocket edition, 1996. Although the department has contracted with private investigative firms to conduct the compliance purchases, the department has retained responsibility and liability over the monitoring. WIC continued to meet with the private investigation firms. (See ROR, Volume III, p. 43.) In the present case, WIC contacted the firm when problems with the reports were discovered. (See ROR, Volume III, p. 45.)
The federal regulations further require that "[t]he State agency shall have the capability to conduct compliance purchases. . . ." 7 C.F.R. § 12.246.12 (i)(5). Capable is defined as "having the ability, capacity, inclination, etc." The New American Webster Handy College Dictionary. The department has such capability. It has "design[ed] and implement[ed] a system to conduct on-site monitoring visits. . . ." 7 C.F.R. § 12.246 (i)(2). It has ensured that the necessary purchases are completed in an efficient manner by contracting with private investigative firms. The regulations provide evidence that such contracts are endorsed: "All contracts or agreements entered into by the State or local agency for the management or operation of food delivery systems shall be in conformance with the requirements of 7 C.F.R. part 3016."7 C.F.R. § 246.12 (a)(4).
Reading the applicable regulations by their plain meaning, the court finds that the department's decision to contract out the performance of compliance purchases, while maintaining responsibility for overseeing such purchases, is within the agency's authority. Accordingly, the compliance purchases that resulted in the present charges against the plaintiff were valid and the charges against the plaintiff are not void.
 C. Whether the agency's denial of the motion to strike was erroneous as a matter of law and based on evidence outside the record.
The plaintiff argues that the defendant's determination that the state's contract with the private investigation firm was erroneously based on the agency's interpretation of the regulations. The plaintiff contends that the defendant is not entitled to deference. The plaintiff further argues that the defendant's decision was improperly based on an ex parte communication in the form of a letter from the USDA northeast region director to the state WIC director. The letter indicates the USDA's opinion that the regulations do not prohibit a state agency from CT Page 4704 contracting with private firms to conduct compliance purchases. The defendant argues that the letter does not constitute an ex parte communication, that the opinion letter was not the sole reason for the defendant's determination and that the plaintiff was not prejudiced by the letter because it was public record from a decision in a previous matter.
General Statutes § 4-181 (a) prohibits ex parte communications, stating in relevant part, that "no hearing officer or member of an agency who, in a contested case, is to render a final decision or to make a proposed final decision shall communicate, directly or indirectly, . . . in connection with any issue of law, with any party or the party's representative, without notice and opportunity for all parties to participate." The letter challenged in the present case does not constitute an ex parte communicate prohibited by § 4-181. The issue of whether the regulations prohibit contracts with private investigative firms is a question of law. The letter and any possible related communications were not made in connection with this case. The letter bears a stamp dated February 8, 1996. The plaintiff in the present case was not disqualified from the WIC program until 1997. Additionally, the letter was attached to a decision in a previous agency decision and as such constitutes public record. The letter merely states an opinion of the USDA and was not addressed toward the present case or any of its parties.
Furthermore, the court has discussed this issue in section V.B. of this decision. As was previously stated, the regulations clearly allow such contracts for services. Accordingly, the court finds that the defendant's determination was not clearly erroneous as a matter of law, nor was it improperly based on evidence not in the record.
 D. Whether the agency's failure to issue a decision within sixty (60) days from the plaintiff's request for a fair hearing requires the plaintiff's disqualification to be deemed void.
The plaintiff argues that the department failed to provide written notification of the hearing decision within sixty days pursuant to7 C.F.R. § 246.18 (b).[2] The plaintiff argues that an agency of the government must strictly observe rules, regulations and procedures and the plain language establishes a mandatory requirement imposed on the state agency's hearing procedures. The plaintiff contends that he received notice of the decision over one year after his request for a fair hearing and, therefore, the decision should be stricken.
The defendant maintains that even if the department failed to issue the written decision within sixty days, such a failure constitutes harmless CT Page 4705 error and, therefore, the reviewing court should not set aside the decision. The defendant contends that the plaintiff was not prejudiced by the delay because the department issued a stay pending the outcome of his hearing.[3]
The UAPA provides: "The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealinghave been prejudiced because the administrative findings . . . are . . . made upon unlawful procedure. . . ." (Emphasis added.) General Statutes § 4-183 (i).[4] In the present case, the defendant issued a stay of the disqualification, which allowed the plaintiff to continue to participate in the WIC program during the hearing process. As such, even if written notification of the hearing decision was not provided within 60 days of the plaintiff's request for a fair hearing, no substantial rights of the plaintiff were prejudiced. Accordingly, the agency's determination must be affirmed.
 E. Whether the plaintiff was denied his right to an impartial decision-maker.
The plaintiff argues that he was denied an impartial decision-maker pursuant to 7 C.F.R. § 246.18 (b)(8).[5] He cites inconsistencies between the ruling on this matter and previous rulings made by the hearing officer regarding reports with alterations similar to those in the present case. The plaintiff also maintains that changes made in the final decision indicate an effort to conceal the partiality of the proposed decision. Finally, he contends that the hearing officer was not impartial because he was advised during the hearing by Dennis Banks, food delivery coordinator for the WIC program. The defendant argues, to the contrary, that the plaintiff failed to overcome the presumption of an impartial decision-maker.
"It is presumed that members of administrative boards acting in an adjudicative capacity are unbiased. . . . The party claiming bias bears the burden of proving a disqualifying interest." (Citation omitted; internal quotation marks omitted.) Pet v. Department of Health Services,228 Conn. 651 677 638 A.2d 6 (1994). "To overcome the presumption of impartiality that attends administrative determinations, a plaintiff must demonstrate either actual bias or the existence of circumstances indicating `a probability of . . . bias too high to be constitutionally tolerable.' . . . One recent statement of the applicable test for disqualification is whether "a disinterested observer may conclude that [the hearing officer] has in some measure adjudged the facts as well as the law of a particular case in advance of hearing it.' (Internal quotation marks omitted.) Clisham v. Board of Police Commissioners,223 Conn. 354, 362, 613 A.2d 254 (1992). However articulated, the test CT Page 4706 for administrative disqualification is inherently fact-bound." (Citations omitted; internal quotation marks omitted.) Transportation General v.Ins. Department, 236 Conn. 75, 76, 670 A.2d 1302 (1996).
In the present case, the plaintiff cites as evidence of the hearing officer's bias the decisions in a similar cases regarding reports by a private investigation firm that contained alterations. Those other cases are not part of the record and are not before this court. Each case must be determined on its facts. As stated in section V.A. of this decision, there was sufficient evidence of the trustworthiness of the reports in the record presently before the court. Because the trustworthiness of the reports is sufficiently supported by the record, the changes in the final decision allowing the reports to be admitted are not sufficient evidence of partiality.
The plaintiff also cites advice given to the hearing officer by a member of the WIC agency as evidence of the hearing officer's bias. General Statutes § 4-181 (b) provides, however, that "a hearing officer may receive the aid and advice of members, employees, or agents of the agency if those members, employees, or agents have not received communications prohibited by subsection (a) of this section." The plaintiff does not identify any improper communications that the agency member may have received and the record does not reveal any such communications. Nor does such advice indicate that the hearing officer adjudged the law and facts prior to taking evidence on the matter. Accordingly, the court finds that the plaintiff failed to sustain his burden of proving bias.
 F. Whether the agency properly considered and determined whether the plaintiff's disqualification will create a hardship for WIC participants.
The plaintiff argues that the Connecticut WIC procedures fail to meet the federal requirement of determining whether WIC participants will suffer hardship due to a vendor's disqualification. The plaintiff contends that, as a result, the plaintiff's disqualification should be overturned. To the contrary, the defendant argues that the federal requirements mandate that the agency consider whether hardship to participants will result from a vendor disqualification, but that an absence of hardship is not a prerequisite to a disqualification. The defendant argues that the procedures followed in the present case properly considered hardship. Moreover, the defendant also maintains that, even if the current procedures are insufficient, the plaintiff lacks standing to challenge his disqualification of the ground of hardship to WIC participants.[6]
CT Page 4707
The applicable federal regulation provides that "[p]rior to disqualifying a food vendor, the State agency shall consider whether the disqualification would create undue hardships for participants."7 C.F.R. § 246.12 (k)(1)(v). A decision of the Superior Court has determined that "the federal requirement that the consideration of undue hardship on WIC participants prior to disqualifying a WIC vendor, does not establish the absence of undue hardship as a condition of disqualification. All that is required is prior consideration of the impact of vendor disqualification on WIC participants." Almonte v.Blumenthal, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 572948 (February 25, 1998, McWeeny, J.).
The plaintiff cites So v. Ledbetter, 209 Ga. App. 666, 434 S.E.2d 517
(1993), to support his proposition that the agency's failure to consider factors other than the distance to other vendors from the disqualified vendor and the decision to disqualify the plaintiff despite hardship are sufficient to overturn the plaintiff's disqualification. So v. Ledbetter
does not, however, stand for such a proposition. The court in So found fault with the agency's procedures because "the procedures did not allowfor consideration of whether disqualification of a vendor would create an undue hardship on participants." (Emphasis added.) So v. Ledbetter,
supra, 520. In the present case, the agency does have procedures for considering hardship. Specifically, the record includes substantial evidence that hardship was considered in the present case. The record contains the participant access form which lists other WIC vendors in the area of the disqualified vendor. (See ROR, Vol. I, p. 90.) The hearing officer considered the form and included in his findings of fact that "[t]here are approximately five (5) authorized WIC vendors within .9 miles of appellant's store." (See ROR, I, p. 10, ¶ 15.)
Although the plaintiff argues that such consideration is insufficient, the plain language of the regulation merely requires consideration of potential hardship and does not specify those factors that might result in such hardship. The regulation does not require an absence of hardship to allow a disqualification, nor does it prevent a disqualification if hardship does, in fact, exist. Accordingly, the court finds that the defendant properly considered hardship and the plaintiff's disqualification may not be overturned on those grounds.
 VI. CONCLUSION
For all of the foregoing reasons, the decision of the agency is affirmed and the appeal is dismissed.
BY THE COURT CT Page 4708
PETER EMMETT WIESE, JUDGE