CRYSTAL FOOD & LIQUOR, INC., Plaintiff-Appellant, v. HOWARD CONSULTANTS, INC., *et al.*, Defendants-Appellees.

First District (1st Division)    Nos. 1—93—3245, 1—93—3541 cons.

Opinion filed December 4, 1995.

Iversen, Carlson & Associates, of Chicago (Herbert P. Carlson and Peter H. Carlson, of counsel), for appellant.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, So-

licitor General, and Brian F. Barov, Assistant Attorney General, of counsel), for appellees Department of Public Health and John R. Lumpkin.

No brief filed for other appellees.

JUSTICE BUCKLEY delivered the opinion of the court:

The Illinois Department of Public Health (the Department) found plaintiff, a vendor in a Federal supplemental food program for women, infants, and children, in violation of the Department regulations regulating such vendors. The Department terminated plaintiff from the program for three years, imposed a $7,500 fine, and demanded reimbursement for the violations. Plaintiff filed a complaint for administrative review and the circuit court dismissed it, finding that the Department's decision was not against the weight of the evidence. On appeal plaintiff argues: (1) the Department's procedure violated due process and Federal law, and (2) the sanctions imposed were extraordinarily harsh and contrary to law.

BACKGROUND

Plaintiff is a food vendor in the Federal Special Supplemental Program for Woman, Infants, and Children (WIC), a program authorized by the Child Nutrition Act of 1966 (42 U.S.C.A. § 1786 (West 1994 & Supp. 1995)). The WIC program was enacted to provide food supplements to eligible low-income pregnant women, breast-feeding mothers, infants, and children under five years old. The program is federally funded and administered by the States.

In Illinois, the WIC program is administered by the Department pursuant to the Illinois WIC Vendor Management Act (Act) (410 ILCS 255/1 et seq. (West 1992)). Families eligible under the program are issued vouchers, which are redeemable at approved vendor stores for the specific food items printed on the face of the vouchers. The vouchers are given to the vendors in exchange for the listed items, and in turn the vendors present them to their banks for payment.

When Congress provided the cash grants to assist WIC program participants, it also authorized the Food and Nutrition Service of the Department of Agriculture to promulgate regulations regarding the administration of the program by the States. (See 7 C.F.R. § 246.1 (1995).) The Illinois WIC Vendor Management Act (410 ILCS 255/1 et seq. (West 1992)) established the authority for the Department to authorize, limit, educate and review the compliance of WIC program retail vendors. Section 6 of the Act provides:

"(a) The Department shall develop a system for monitoring the operations of all WIC retail food vendors to ensure compliance with federal and State laws and rules governing the WIC program.

(b) The Department shall investigate all alleged violations of the federal and State laws and the rules promulgated thereunder.

(c) The Department shall develop, by rule, a system of monetary penalties and other sanctions for WIC retail vendors determined to be in violation of program regulations. The level and severity of the sanctions shall be consistent with the type and frequency of violations, and may include, but shall not be limited to, suspension or termination from the program as well as monetary penalties." (410 ILCS 255/6 (West 1992).)

The Act also directs the Department to "promulgate such rules as it deems necessary to carry out its responsibilities under this Act and under relevant federal law and regulations." 410 ILCS 255/8(a) (West 1992).

The Department issued a notice of violation against plaintiff on May 7, 1992, for violating the Special Supplemental Food Program for Women, Infants, and Children (42 U.S.C.A. § 1786 (West 1994 & Supp. 1995)), the WIC Vendor Management Act (410 ILCS 255/1—9 (West 1992)), and the Department's regulations promulgated pursuant to its statutory authority to monitor the WIC program. The notice stated that on three instances an investigator had purchased food using a WIC voucher at plaintiff's store, and on each occasion plaintiff submitted and was paid amounts in excess of the price of the actual food sold. These instances constituted three Class A violations under the Department regulations. (77 Ill. Adm. Code §§ 672.505(a)(5), (a)(6) (Supp. 1993).) The notice of violation terminated plaintiff from the WIC program for three years, imposed a fine of $7,500, and demanded reimbursement of $13.15 for the violations. The notice also advised plaintiff of the right to request a hearing within 15 days, pursuant to 77 Ill. Adm. Code § 672.615(a) (Supp. 1993).

Plaintiff requested a hearing and the following evidence was presented before the hearing officer. Clarence Jordan testified for the Department. He stated that he was a private investigator for Howard Consultants, Inc., a private detective agency. Jordan was assigned by Howard Consultants to do WIC investigations, and he investigated plaintiff's store in January 1992.

On January 8 and 10, Jordan entered plaintiff's store, posing as a WIC participant, with a voucher that authorized him to purchase one gallon of milk and either one 46-ounce can of juice or one 12-ounce can of frozen juice concentrate. On both dates he purchased one 46-ounce can of Bluebird brand grapefruit juice with a posted shelf price of $2.19. According to Jordan's report, on January 11, at 11:56 p.m., he made a third visit to plaintiff's store. On that date he possessed a food voucher that authorized him to purchase two gallons of milk,

juice, eggs, and cereal. He purchased one 46-ounce can of orange juice, one dozen eggs, and two boxes of breakfast cereal. The shelf prices for these items totalled $9.46. Jordan testified that on each occasion he left plaintiff's store without any milk.

The Department determined that plaintiff submitted the vouchers without indicating that the milk was not received by Jordan and collected payments in amounts greater than the shelf prices of the items that Jordan actually did receive. Plaintiff stipulated that it submitted and received payment of $4.78 each for both the June 8 and June 10 vouchers. This amount was $2.59 higher than the posted shelf price for the juice received by Jordan on those dates. Plaintiff also stipulated that it submitted and received $17.43 for the January 11 voucher. This amount was $7.97 greater than the total posted shelf prices for the items received.

Jordan explained his procedure for investigating plaintiff's store. After each purchase he took the food items to his automobile and tagged and marked each item with the location, time, and date of purchase. He later photographed each food item with a camera provided by the Department and prepared a report along with the photograph, which he submitted to the Department.

Marianne Denby, a public health specialist for the Department, also testified. She confirmed that Jordan was a WIC investigator employed by Howard Consultants and that Howard Consultants was hired by the Department to conduct investigations of WIC vendors. Denby compared Jordan's reports to the vouchers submitted by plaintiff for payment and found discrepancies between them regarding the items purchased and the prices charged. These discrepancies led her to institute the administrative proceedings.

Plaintiff presented three witnesses at the hearing. The store manager testified that they did not start carrying the Bluebird brand juice until May 1992. However, he admitted that he did not do all the ordering for the store in January 1992. He also stated that the brand of grapefruit juice sold by plaintiff's store was not included on its price list. The store owner testified that he did not know or could not remember whether Bluebird brand grapefruit juice was carried in the store in January 1992. Both testified that the store was not open past 9 p.m. Further, the cashier, who Jordan claimed sold him the food on January 8, 1992, testified that she did not work that day.

Following the hearing, the hearing officer found that plaintiff had submitted and received payment for three food vouchers in excess of the amount of the purchase price. The hearing officer considered all of the evidence and found that the testimony of plaintiff's witnesses did not controvert Jordan's testimony. She found that plaintiff

had committed three Class A violations of the Department regulations and recommended that it be terminated from the program for three years, fined $7,500, and ordered to reimburse the Department for overcharges. On December 14, 1992, the Department issued a final order accepting the hearing officer's recommendations.

On December 31, 1992, plaintiff filed a complaint for administrative review in the circuit court. In the complaint, plaintiff challenged the legality of the Department's procedures, alleging that the hearing procedures violated due process and State and Federal law. Plaintiff also alleged that the Department's findings of fact and conclusions of law were contrary to the manifest weight of the evidence and that the penalties imposed on plaintiff were contrary to law. Finally, plaintiff contended that the Department's final decision was untimely under its own regulations. On August 13, 1993, the circuit court found that the Department's decision was not contrary to the manifest weight of the evidence and dismissed the complaint. Plaintiff filed its timely notice of appeal on September 10, 1993.

On September 18, 1992, plaintiff filed a second complaint in the circuit court against Howard Consultants, Clarence Jordan, the Department, and John Lumpkin, the Department's Director. Plaintiff alleged violations of the Illinois Private Detective, Private Alarm and Private Security Act of 1983 (Detective Act) (225 ILCS 445/1 through 30 (West 1992)), tortious interference with contract, and fraud. Plaintiff sought damages and injunctive relief to prevent the continuance of the allegedly unlawful undercover investigations, to void the administrative proceeding, and to require the Department to honor and pay for the vouchers that were being accumulated by plaintiff at the time.

On September 30, 1992, the circuit court denied the petition for a temporary restraining order and dismissed the injunction action. However, the court granted plaintiff leave to file an amended complaint. On November 12, 1993, plaintiff filed a motion to reconsider and vacate the court's order. The circuit court denied the motion and dismissed the complaint with prejudice on September 1, 1993. Plaintiff timely filed its notice of appeal, and these two appeals were subsequently consolidated for review.

After oral argument, plaintiff filed a motion to narrow the issues on appeal and we granted this motion in the interest of judicial economy. By narrowing the issues, plaintiff has essentially abandoned all of its arguments relating to the second appeal and several of its arguments relating to the first. The remaining issues before this court are: (1) whether the administrative hearing procedures established for violations of the WIC Vendor Management Act violate

due process and conflict with Federal law; and (2) whether the sanctions imposed were extraordinarily harsh and inconsistent with Federal rules and law.

DISCUSSION

I. THE HEARING PROCEDURE

Plaintiff contends that the hearing procedure promulgated by the Department violates due process and provisions of the Federal regulations governing the operation of the WIC program. The law, which the plaintiff has completely disregarded in its brief, supports the opposite conclusion. Although administrative proceedings are subject to the requirements of due process of law, they are not subject to the same safeguards and protections afforded in criminal prosecutions. (*Sharma v. Zollar* (1994), 265 Ill. App. 3d 1022, 1030, 638 N.E.2d 736, 742.) Due process commands a fair proceeding that includes proper notice, an opportunity to be heard, and an impartial tribunal. (*Abrahamson v. Illinois Department of Professional Regulation* (1992), 153 Ill. 2d 76, 95, 606 N.E.2d 1111, 1120.) "It is settled that an administrative hearing is not a partisan hearing with the agency on one side arrayed against the individual on the other. Rather, it is an administrative investigation instituted for the purpose of ascertaining and making findings of fact." *Abrahamson*, 153 Ill. 2d at 94, 606 N.E.2d at 1120.

Plaintiff claims that it did not receive a fair and impartial hearing because the Director brought the initial charges, appointed the prosecutor, and made the ultimate finding of violations. However, due process is not denied where investigative, judicial and prosecutorial functions are combined in one agency. (*Sharma*, 265 Ill. App. 3d at 1032, 638 N.E.2d at 743.) "Furthermore, some mixture of judicial and prosecutorial function is acceptable in administrative proceedings, provided the person performing the quasi-prosecutorial function is not also a member of the tribunal." *Sharma*, 265 Ill. App. 3d at 1032, 638 N.E.2d at 743.

■ Plaintiff's due process rights were not violated by the Department's procedure. Plaintiff received proper notice and an opportunity to present its case. It is true that one person, the Director, signed the notice of violation and appointed a prosecutor, hearing officer and deputy director to review the hearing officer's findings. However, that is not to say that the Director alone brought the initial charges, prosecuted the case, presided over the hearing, and made the ultimate decision.

The Director administered the Department's procedure, but many

people were involved in the ultimate finding of violations. Marianne Denby found the discrepancies between Jordan's report and the vouchers submitted by plaintiff, and she decided to institute the administrative proceedings. Different individuals assumed the roles of prosecuting attorney and hearing officer at plaintiff's hearing. Finally, yet another person, an appointed deputy director, reviewed the hearing officer's findings and made the final decision. There is no evidence that any of the individuals appointed by the Director acted other than impartially. Therefore, plaintiff received all the due process necessary in an administrative proceeding.

Further, a reading of the relevant Federal and Department regulations reveals that no conflict existed between the two. At the time of the plaintiff's hearing, the relevant Federal regulation governing administrative hearings for WIC violations provided as follows:

"(a) *Requirements.* The State agency shall provide a hearing procedure whereby a food vendor *** adversely affected by a State or local agency action may appeal the action.

\* \* \*

(b) *Procedure.* The State agency hearing procedure shall at a minimum provide the local agency or vendor with the following:

(1) Written notification of the adverse action, the cause(s) for and the effective date of the action. Such notification shall be provided to participating food vendors not less than 15 days in advance of the effective date of the action. ***

(2) The opportunity to appeal the adverse action within a time period specified by the State agency in its notification of adverse action.

(3) Adequate advance notice of the time and place of the hearing to provide all parties involved sufficient time to prepare for the hearing.

(4) The opportunity to present its case and at least one opportunity to reschedule the hearing date upon specific request. The State agency may set standards on how many hearing dates can be scheduled, provided that a minimum of two hearing dates is allowed.

(5) The opportunity to confront and cross-examine adverse witnesses.

(6) The opportunity to be represented by counsel, if desired.

(7) The opportunity to review the case record prior to the hearing.

(8) An impartial decision maker, whose decision as to the validity of the State or local agency's action shall rest solely on the evidence presented at the hearing and the statutory and regulatory provisions governing the Program. The basis for the decision shall

be stated in writing, although it need not amount to a full opinion or contain formal findings of fact and conclusions of law." 7 C.F.R. §§ 246.18(a), (b) (1992).

■ The Department regulations provided for each of the Federal requirements. Section 672.615 provided for written notification of an adverse action 15 days prior to taking such action and required the Department to provide a hearing with adequate advance notice. (77 Ill. Adm. Code § 672.615 (1994).) This section also provided that an administrative action was commenced by issuing a notice of violation and that a termination or penalty assessed pursuant to the notice was not effective until after 15 days from the receipt of the notice. (77 Ill. Adm. Code § 672.615 (1994).) Part (a) of that section gave the alleged violator 15 days from receipt of the notice of violation to request a hearing on the violation. 77 Ill. Adm. Code § 672.615(a) (1994).

Department regulations also provided the vendor with: one opportunity for continuance (77 Ill. Adm. Code § 672.620(e) (1994)); the opportunity to present his case and to confront and cross-examine witnesses (77 Ill. Adm. Code § 672.645 (1994)); the opportunity to be represented by counsel (77 Ill. Adm. Code § 672.610 (1994)); and the opportunity to review the Department's case file (77 Ill. Adm. Code § 672.625(a) (1994)). Finally, the regulations provide that the hearing shall be presided over by either the Department's Director or a hearing officer appointed by the Director and that the hearing officer has the responsibility to conduct the hearing, consider the evidence, and make written findings of fact and conclusions of law with recommendations as to the disposition of the case. 77 Ill. Adm. Code §§ 672.645(b), 672.660 (1994).

The Federal code required an impartial decision maker, and one was provided to plaintiff at its hearing. As we stated above, the fact that the Director appointed the hearing officer does not by itself show that plaintiff was provided with a partial decision maker. For these reasons, we find plaintiff's challenges of the Department's procedure to be without merit.

## II. SANCTIONS

Plaintiff argues that the sanctions imposed by the Department are extraordinarily harsh and inconsistent with Federal rules and law. A reviewing court should defer to the administrative agency's expertise and experience in determining the appropriate sanction to protect the public interest. (*Abrahamson*, 153 Ill. 2d at 99, 606 N.E.2d at 1122.) Penalties imposed by an administrative agency should not be reversed unless they are arbitrary or unreasonable. See *Depart-*

*ment of Mental Health & Developmental Disabilities v. Civil Service Comm'n* (1981), 85 Ill. 2d 547, 552, 426 N.E.2d 885, 887.

■ The sanctions imposed in this case were neither arbitrary nor unreasonable. Plaintiff was found to have committed three Class A violations of the Department regulations. (77 Ill. Adm. Code §§ 672.505(a)(5), (a)(6) (1994).) At the time of plaintiff's hearing a Class A violation gave rise to the following penalties: (1) reimbursement to the Department for overcharges; (2) termination from the program for a minimum of one year; and (3) a $2,500 fine for each violation. (77 Ill. Adm. Code § 672.510(a) (Supp. 1993).) Thus, the sanctions fell within what were then the requirements of the Department's regulation.

However, plaintiff argues that plaintiff's disqualification from the program does not comport with Federal law. Regarding sanctions, the Federal code provides:

> "(1) The state agency shall establish policies which determine the type and level of sanctions to be applied against food vendors, based upon the severity and nature of the Program violations observed, and such other factors as the State agency determines appropriate, such as whether the violation represented repeated offenses over a period of time, whether the offenses represented vendor policy or whether they represented the actions of an individual employee who did not understand Program rules and whether prior warning and an opportunity for correction was provided to the vendor. ***
>
> (i) Food vendors may be subject to sanctions in addition to, or in lieu of, disqualification, such as claims for improper or overcharged food instruments ***.
>
> (ii) The period of disqualification from Program participation shall be a reasonable period of time, not to exceed three years. The maximum period of disqualification shall be imposed only for serious or repeated Program abuse." (7 C.F.R. § 246.12(k)(1) (1992).)

The Department ordered plaintiff disqualified for three years, which was the maximum amount of time allowed by the Federal code. However, we do not find the Department's actions here to be arbitrary or unreasonable. Contrary to the way plaintiff would like to describe the violations, there was more to them than a store clerk simply forgetting "to cross out the milk on the voucher." The evidence showed that plaintiff had a practice of entering an amount on the vouchers that did not reflect the actual shelf prices for the items sold. Plaintiff did not offer any explanation for entering the higher, and seemingly arbitrary, amounts on the vouchers. It was reasonable for the Department to find that plaintiff's violations constituted serious and repeated abuse.

Plaintiff cites *So v. Ledbetter* (1993), 209 Ga. App. 666, 434 S.E.2d 517, in which the Georgia Court of Appeals found that the Georgia WIC program penalty procedures were in violation of Federal law because they failed to consider the circumstances of the violation. The court stated:

"The record shows that DHR's procedures considered only whether overcharging had occurred and not 'the severity and nature of the program violations observed.' Thus, a single inadvertent $.50 overcharge would require the same sanction as multiple intentional overcharges. Moreover, the procedures did not allow for consideration of whether disqualification of a vendor would create an undue hardship on participants." *So*, 209 Ga. App. at 670, 434 S.E.2d at 520.

*So* does not support plaintiff's argument because, unlike the Georgia WIC regulations, the Illinois regulations penalize according to the type of violation. The Department regulations divide the violations into three classes according to their nature and severity, and each class of violations requires a certain penalty. This is all that the Federal code requires. Section 246.12(k)(1) states: "The State agency shall establish policies which determine the type and level of sanctions to be applied against food vendors, based upon the severity and nature of the Program violations observed, *and such other factors as the State agency determines appropriate* \*\*\*." (Emphasis added.) (7 C.F.R. § 246.12(k)(1) (1992).) It is left to the discretion of the agency to determine what, if any, other factors are to be considered.

Finally, as the *So* court states, the Federal regulations do require the State agency to consider whether disqualifying a vendor would create undue hardships for participants. (7 C.F.R. § 246.12(k)(1)(v) (1992).) However, plaintiff does not argue this point and we assume that the Department followed the Federal code and considered this factor before it decided to terminate plaintiff from the program.

Accordingly, the circuit court order dismissing plaintiff's complaint for administrative review is affirmed.

Affirmed.

WOLFSON and BRADEN, JJ., concur.