FIFTH DIVISION

May 31, 2002

No. 1-01-0964

MARIA PRATO, ) APPEAL FROM THE

) CIRCUIT COURT

Plaintiff-Appellant, ) OF COOK COUNTY.

)

v. )

)

PAUL VALLAS, CHICAGO SCHOOL REFORM )

BOARD OF TRUSTEES, ILLINOIS STATE BOARD )

OF EDUCATION, and JULIUS MENACKER, ) HONORABLE

) DOROTHY K. KINNAIRD,

Defendant-Appellees. ) JUDGE PRESIDING.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court: 

This is an appeal from the dismissal of a complaint for administrative review by the circuit court of Cook County.  Defendants, Paul Vallas (Vallas), then the chief executive officer (CEO) of Chicago Public Schools (CPS), and the Chicago School Reform Board of Trustees (the School Board or Board), brought charges for dismissal against plaintiff, Dr. Maria Prato, alleging violations of her employment contract as principal of the Clay Elementary School (Clay).  Following an administra­tive hearing, plaintiff was discharged from her position.  The circuit court dismissed plaintiff's subsequent complaint for administrative review against the above-named defendants in addition to other defendants, the Illinois State Board of Education (State Board) and hearing officer, Julius Menacker.  Defendants Vallas and the Board filed a separate brief from defendants the State Board and Menacker.

On appeal, plaintiff contends that:  (1) the School Board lacked jurisdiction to terminate plaintiff from her employment contract for failure to issue a statutorily required formal warning; (2) plaintiff's 1998-2002 performance contract rights were improperly terminated by discharge proceedings involving conduct occurring during a prior performance contract; and (3) the statute under which plaintiff was terminated is unconstitutional.  For the following reasons, we affirm the judgment of the circuit court.

BACKGROUND

I.  CHRONOLOGY

The following chronology outlines the events relevant to plaintiff's appeal:

JUNE 22, 1998: Chicago Public Schools and Vallas (The Board) bring charges against Prato.

JUNE 23, 1998: Prato requests a hearing under 34-85 of the Illinois School Code

JULY 15, 1998: Pre-suspension hearing.

JULY 27, 1998: Prato suspended without pay.

NOVEMBER 1998: Hearing begins.

MAY 12, 1999: Hearing officer recommends upholding Board's dismissal of Prato.

JUNE 17, 1999: Prato files complaint for administrative review in circuit court.

JUNE 23, 1999: School Board formally adopts recommendations of hearing officer.

JUNE 24, 1999: Vallas informs Prato that Board accepts hearing officer's recommendation and discharges Prato.

AUGUST 17, 1999: Prato files seven-count amended complaint in circuit court.

SEPTEMBER 2, 1999: Circuit court dismisses count I.

NOVEMBER 22, 1999: Circuit court has hearing on remaining counts and dismisses counts III, IV, VI and VII with prejudice, and allows Prato to replead count V, the due process claim.

DECEMBER 16, 1999: Prato files notice of appeal in the circuit court (No. 1-99-4489).

DECEMBER 17, 1999: Prato files second amended complaint which is identical to 1st amended complaint.

JUNE 2000: Appellate court dismisses 1-99-4489 for want of prosecution.

FEBRUARY 7, 2001: Following hearing, circuit court finds in favor of Board on count II, determines that Board's decision was not against the manifest weight of the evidence.

FEBRUARY 20, 2001: Circuit court determines that Prato did not file an amended complaint per order of November 22, 1999, and dismisses count V with prejudice.

MARCH 9, 2001: Prato files notice of appeal of the orders entered on February 7, 2001, and February 20, 2001, pertaining to count II.

II.  FACTS

The record reveals the following relevant facts.  On June 22, 1998, the Chicago Public Schools, through its CEO, Vallas, and the Board, brought charges against plaintiff, Dr. Maria Prato, seeking her discharge from her position as principal of the Clay Elementary School.  Plaintiff was charged with:  (1) conduct unbecoming a principal; (2) gross dereliction of duties; (3) violation of her uniform performance contract; (4) improper recruitment activities for the Options for Knowledge program; (5) violations of student confidentially; (6) retaliation in violation of the Whistle Blower Protection section of the Illinois School Code (105 ILCS 5/34-2/4c. (West 1998)); (7) insubordination; (8) disregard of practice and procedure; (9) refusing to enroll students; and (10) conduct causing harm to the students of Clay Elementary School.

The Board arranged for a hearing officer to hold a hearing to determine if plaintiff should be suspended without pay pending a hearing on the changes.  A presuspension hearing was conducted on July 15, 1998, and plaintiff was represented by counsel.  On July 24, 1998, the hearing officer recommended plaintiff's suspension without pay.  On July 27, Vallas notified plaintiff that she was suspended without pay effective immediately.  

In accordance with section 34-85 of the School Code (105 ILCS 5/34-85 (West 1998)), the State Board sent resumes of five prospective impartial hearing officers to both the Board and to plaintiff.  A process of elimination resulted in the selection of Julius Menacker as the hearing officer. 

On August 18, 1998, plaintiff filed a complaint in the United States District Court for the Northern District of Illinois (District Court), alleging violations of her right to due process and breach of contract.  She sought a temporary retraining order, demanding her reinstatement as principal at Clay, and a preliminary injunction.  On August 20, 1998, the District Court found that plaintiff's presuspension hearing was adequate and denied her request for an injunction.  Plain­tiff's dismissal hearing commenced on November 17, 1998, and continued for 16 days.

The Board first alleged that plaintiff violated Board guidelines regarding obtaining confidential information.  Clay has an "Options for Knowledge" (Options) program which offers advanced classes to gifted students.  Known within the CPS as a "magnet program," Clay gives first preference to neighborhood students.  If more space is available, parents outside the neighborhood may apply to send their children to Clay.  On May 19, 1997, plaintiff sent out more than 100 accept­ance letters to students from 18 to 20 different schools who had achieved high standardized test scores. These students had not applied to admission to Clay, and the Board alleged plaintiff wrongfully obtained access to the students' names, addresses, grades, test scores and class rank.  Parents complained about the letters.  The Board alleged that plaintiff enrolled one student, "K.H.," who resided outside of the school boundaries.  

The Region 6 Education Officer called a meeting of all the principals in the district to discuss the acceptance letters sent out by plaintiff.  At the meeting plaintiff claimed that she obtained the names of the students from a computer disk which was kept by the Clay Options Clerk, who died in March 1996.  Plaintiff stated that she thought the disk contained the names of students who had applied for admission to Clay.  Plaintiff was asked to produce the disk but was unable to do so, stating that she searched for the disk both at work and at home and could not find the disk.  Plain­tiff also stated that Clay had 30 vacancies in the Options program.  One week later, however, plaintiff informed Jack Harnedy, the CPS desegregation implementation coordinator, that Clay had no Options vacancies. 

The hearing officer rejected plaintiff's explanation that she was unaware of the circum­stances surrounding the issuance of the acceptance letters because of the death of the Options clerk.  The hearing officer noted that plaintiff determined that no vacancies existed in the Options program for qualified applicants only after discovery of plaintiff's unauthorized mailing.  The hear­ing officer further found that plaintiff's testimony that the disc containing the names of improperly recruited students was lost was not credible, and that her behavior was in clear violation of Board regulations and policy.  

The Board further charged that plaintiff improperly retaliated against teachers in violation of the Whistle Blower Protection section of the Illinois School Code (105 ILCS  5/34-2.4c).  On June 12, 1996, the Board charged plaintiff with permitting security breaches that allowed students at Clay to study and practice taking standardized tests before they were administered.  As a result,  all Clay students were tested twice in 1996.  After a hearing, plaintiff was suspended without pay for ten school days.  Substitute teacher Janet Tisza testified at the July 9, 1996, hearing against plaintiff.  Thereafter, plaintiff gave Tisza a negative evaluation, followed by a dismissal letter dated July 1, 1996, postmarked July 17, 1996.  

Eileen Reardon, taught at Clay from September 1995 until June 1996.  Reardon testified at plaintiff's hearing in July 1996, that she reported testing violations to the Clay Curriculum Coordina­­tor, Ms. Margaris.  On May 3, 1996, in the middle of the day, Board investigators pulled Reardon out of her classroom for questioning.  The same day, plaintiff was removed from the school and assigned to the Central Office.  The next day, Reardon received a telephone call at home from plaintiff's husband, an attorney.  Reardon testified that plaintiff's husband threatened Reardon's job and demanded that she tell him what happened at Clay on the previous day. Reardon testified that on June 13, 1996, she received a negative evaluation from plaintiff.  On July 20, 1996, Reardon received a letter from plaintiff dated July 1, 1996, postmarked July 17, 1996, advising that her position had been filled by an assigned teacher.  Reardon obtained a new position and requested an administrative transfer on August 15, 1996. 

The Board further charged that plaintiff discriminated against homeless children and youth against the Board's enrollment policies.  Witnesses testified that they had difficulty enrolling children who lived in a shelter for abused and neglected children.  Plaintiff was charged with improper conduct regarding numerous incidents involving a particular student, H.A.  H.A., a ten-year old student in foster care, who was diagnosed with Attention Deficit Hyperactivity Disorder, was suspended by plaintiff many times for at total of 44 days.  At one time plaintiff caused a police report to be filed against H.A., and to deny certain special education services to H.A.

Plaintiff was also charged with failure to provide copies of Clay employment commitment agreements to the Board's General counsel.  In July 1996, the Board learned that plaintiff required teachers to sign employment commitment agreements before obtaining Board approval.  Plaintiff's action violated the Board's employment policies and procedures which require that only the Board and the Union negotiate the terms and conditions of Board employment.  Plaintiff was ordered to cease her use of the commitment agreement in August 1996, and to provide copies of all signed agreements to the Board.  Plaintiff failed to provide the signed agreements, and later informed the Board that the agreements had been destroyed.

The Board further charged plaintiff with violating a student's confidentiality by sending a carbon-copy of a letter plaintiff wrote to a school administrator about a student to plaintiff's own attorney.  The allegations further stated that plaintiff placed undue restrictions upon Board personnel providing services to her school; failed to provide records of student suspensions to the administration on a timely basis; violated staffing procedures with one teacher; insubordinately failed to provide to the Regional Education Officer the school's "Toilet Recess Policy"; and improperly cancelled a state pre-kindergarten program.  The Board concluded that plaintiff's conduct as described was "cruel, immoral and negligent, and caused psychological harm to the Clay students, staff and community."  The Board also alleged that plaintiff's conduct was irremediable.

Five members of the Local School Counsel (LSC) testified at the hearing that they were unaware of any of the alleged improper conduct by plaintiff.

On May 12, 1999, the hearing officer issued a decision recommending that the School Board's dismissal of plaintiff be upheld.  The hearing officer noted that plaintiff possessed a valid employment contract for the period 1998-2002.  The contract contained a provision for "removal for cause" pursuant to section 5/34-85 of the School Code.  The hearing officer found that the Board sustained the charges and specifications against plaintiff for (1) flagrant violation of the Board's policy in her efforts to recruit high quality students to attend Clay School who had not applied; (2) retaliated against teachers who cooperated with an investigation of plaintiff; (3) was insubordinate to requests and orders from Board personnel; (4) failed to observe the due process rights of students; and (5) engaged in a clear pattern of resistance to, delay in responding to and/or maladministration of various Board rules and policies.  

On June 17, 1999, plaintiff filed a complaint for administrative review in the circuit court.  Plaintiff challenged the decision of the hearing officer alleging that it was against the manifest weight of the evidence and that the hearing officer denied her a fair and impartial hearing.  Plaintiff asked that the court reverse the decisions of the hearing officer and the Board.

The Board reviewed the hearing officer's findings of fact and recommendation.  On June 23, 1999, the board formally adopted the recommended decision of the hearing officer.  In a letter dated June 24, 1999, Vallas informed plaintiff that the Board had accepted the hearing officer's recommendation and that she was discharged upon receipt of the letter. 

On August 17, 1999, plaintiff filed a seven-count amended complaint.  In count I, plaintiff sought administrative review of the decision of the hearing officer.  Counts II through IV sought review of the decision of the School Board.  In Count II, plaintiff sought review under Administrative Review Law.  In count III, plaintiff sought review by way of a petition for a writ of mandamus, and in count IV, plaintiff sought review through a common-law writ of certiorari. 

Plaintiff also challenged her dismissal as a violation of her rights to due process under both the state and federal constitutions.  In count V, plaintiff alleged that the procedures established under section 34-85 of the Illinois School Code violated due process in that the procedures:  (1) allowed the Board to ignore the decision of the hearing officer without providing any rationale for its decision; (2) provided no standards to guide the Board in reviewing the hearing officer's decision; (3) did not require the Board to review the record of the hearing or the hearing officer's decision before either accepting or rejecting the recommendation; and (4) ensured that the Board would "sit as judge in its own case."  In count VI, plaintiff asserted a due process claim pursuant to 42 U.S.C. § 1983.  In count VII, plaintiff alleged that she was dismissed in violation of her contract.

On September 2, 1999, the circuit court dismissed count I of plaintiff's complaint with prejudice.  Following a hearing on November 22, 1999, the circuit court dismissed counts III, IV, VI, and VII, on motions of the Board and The State Board.  The court dismissed count V, the due process claim, with leave to replead within 28 days.  The court took no action respecting count II, in which plaintiff sought administrative review of the Board's decision.

On December 16, 1999, plaintiff filed a notice of appeal challenging the dismissal of counts III, IV, VI and VII.  In June 2000, this court dismissed the appeal for want of prosecution (Appeal No. 1-99-4489).  The next day, plaintiff filed a second amended complaint, modifying count V to add allegations that section 34-85 violated her right to substantive due process by:  (1) failing to require that the administrative record be transmitted from the hearing officer to the Board; (2) allowing Vallas and the prosecuting attorney to participate in the Board's deliberations on whether or not to discharge plaintiff; (3) permitting the Board to terminate plaintiff without having to consider any of the evidence in making its decision; and (4) allowing the Board to terminate plaintiff without having to provide any reason for doing so.

On February 7, 2001, the circuit court awarded judgment for the defendants on count II, holding that the Board's decision was not against the manifest weight of the evidence.  After a hearing on February 20, 2001, the circuit court dismissed count V with prejudice.  Plaintiff filed her timely notice of appeal on March 9, 2001.

OPINION

Initially, plaintiff contends that the School Board lacked jurisdiction to terminate her from her employment contract for failure to issue a statutorily required formal warning resolution.  

Under the Administrative Review Act, this court reviews all question of law and fact presented by the entire record.  735 ILCS 5/3-101, 
et seq.
 (West 1998).  An administrative agency is responsible for weighing the evidence, determining the credibility of the witnesses and resolving conflicts in testimony.  
Nichols v. Department of Employment Security
, 218 
 
Ill. App. 3d 803, 809, 578 N.E.2d 1121 (1991).  On administrative review, the circuit court examines the findings of the agency to determine only whether such findings are against the manifest weight of the evidence; the circuit court does not resolve factual inconsistencies nor does it re-weigh the evidence.  
Ruther v. Hillard
, 306 
 
Ill. App. 3d 997, 1002, 715 N.E.2d 772 (1999).  The decision of an administrative agency is against the manifest weight of the evidence only if the opposite conclusion is clearly evident.  
Abrahamson v. Illinois Department of Professional Regulation
, 153 Ill. 2d 76, 606 N.E. 2d 1111 (1992).

Here, plaintiff does not contest the decision of the hearing officer as against the manifest weight of the evidence.  Plaintiff argues only that her termination by the Board constitutes an error of law.  

Where the question involves one of law, the proper standard of review is 
de novo
.  
Midwest Central Education Ass'n v. Illinois Educational Labor Relations Board
, 277 
 
Ill. App. 3d 440, 444, 660 N.E.2d 151 (1995).  This court reviews the decision of the administrative agency, rather than the decision of the circuit court.  
Calabrese v. Chicago Park District
, 294 
 
Ill. App. 3d 1055, 691 N.E. 2d 850 (1998).

Section 34-85 of the School Code provides in pertinent part:

"No principal employed by the Board of Education during his or her performance contract shall be removed except for cause * * *. Before service of notice of charges on account of causes which may be remediable, the teacher or principal shall be given reasonable notice in writing stating specifically the causes which, if not removed, may result in charges * * * ."  105 ILCS 5/34-85.

The record shows that the Board relied on the recommendations of the hearing officer in making its determination to terminate plaintiff from her position as principal of Clay.  The hearing officer analyzed his findings to determine whether plaintiff's proven conduct constituted irremediable cause for her dismissal in light of 
Gilliland v. Board of Education of Pleasant View Consoli­dated School District No. 62
, 67 Ill. 2d 143, 365 N.E.2d 322 (1977), 
Board of Education v. Van Kast
, 253 
 
Ill. App. 3d 295 (1993), and 
McCutcheon v. Board of Education
, 94 Ill. App. 3d 993 (1981).

The hearing officer noted that each of the charges sustained against plaintiff, taken individ­ually, was remediable, but that taken together, collectively, the charges fell under the exception contained in 
Gilliland
 and thereby became irremediable. The hearing officer determined that according to 
Gilliland
, plaintiff's conduct had caused damage to the students, faculty or school because she committed the conduct and that a warning would not have prevented the conduct from recurring since plaintiff knew that she should not have engaged in the conduct.  The hearing officer concluded by recommending the dismissal of plaintiff.

Plaintiff argues she cannot be dismissed from her employment for conduct that is remediable unless the Board first issues her a formal warning resolution, without which, the Board has no jurisdiction to dismiss an employee.  In support, plaintiff cites 
Hegener v. Board of Education
, 208 
 
Ill. App. 3d 701, 731, 567 N.E.2d 566 (1991).  There, this court held that if a cause is remediable, a teacher is entitled to written warning prior to termination.  For conduct to be considered irremediable, the damage caused by that conduct must have been "significant."  
Board of Education v. Illinois State Board of Education
, 160 
 
Ill. App. 3d 769, 776, 513 N.E.2d 845 (1987).

Plaintiff argues that the 
Gilliland
 exception is inapplicable here for several reasons.  First, plaintiff cites the hearing testimony of parents in the community who were overwhelmingly in favor of retaining plaintiff for the good of the Clay school.  Plaintiff also notes that regional education officer Shereye Garmony-Miller testified that plaintiff corrected any problems which were brought to her attention and that in all material respects plaintiff corrected any unsatisfactory or deficient performance or conduct.  Thus, plaintiff's conduct was not "significant" as no severe harm to the students or school resulting from her conduct was demonstrated. 

Plaintiff further notes that the record reflects that all of the "alleged misdeeds" sustained by the hearing officer occurred in the 1996-97 school year, but that Vallas did not bring the charges against her until the end of 1998.  Plaintiff argues that because one year elapsed before Vallas brought the charges against her, the Board "admitted" that plaintiff's conduct was not only remediable, but that it was actually remedied by plaintiff.  Thus, plaintiff argues, her conduct was remediable and did not become irremediable over time; in sustaining plaintiff's discharge, the hearing officer mistakenly relied on 
Gilliland
.  

Finally, plaintiff argues that the evidence failed to sustain the charge of violation of the Whistle Blowers Protection section of the School Code.  The Whistle Blowers Protection section prohibits an individual from taking any disciplinary action against an employee on the grounds that the employee engaged in certain protected activities.  Plaintiff argues that there is no adverse employment action at the root of the alleged retaliatory action, as required by Illinois law.  See, 
e.g.
, 
State v. Human Rights Commission
, 178 
 
Ill. App. 3d 1033 (1989); 
Loyola University v. Human Rights Comm.
, 149 
 
Ill. App. 3d 8 (1986) (a 
prima facie
 case of retaliation demonstrated by showing there is a short time between the protected activity and the adverse employment action).  Plaintiff argues that the record fails to demonstrate an act of retaliation against teachers Tisza and Reardon, as the result of an adverse employment action.  Plaintiff argues she merely issued two "satisfactory" performance evaluations and granted transfers requested by the two teachers. 

The record shows that the hearing officer correctly applied the 
Gilliand
 two-prong test.  The test requires that a hearing officer first determine "whether damage has been done to the students, faculty or school."  Next, the hearing officer must determine "whether the conduct resulting in that damage could have been corrected" if the principal's superiors had warned her.  

  Plaintiff request that this court waive our review of the facts and review the question of remediability as one of law.  However, whether conduct is remediable is a question of fact, not of law, and the determination lies within the discretion of the fact finder.  
Wells v. Board of Education of Community Consolidated School District No. 64
, 85 
 
Ill. App. 2d 312, 315 N.E.2d 6 (1967).  Our function is limited and does not permit substitution of the court's judgment for that of the Board.  Rather, the Board's findings must be sustained unless those findings are contrary to the manifest weight of the evidence.  
Gilliland
, 67 Ill. 2d at 153.  We therefore decline to accept plaintiff's request to review a question of fact as a question of law.

The hearing officer found that plaintiff engaged in unauthorized student recruitment activities which damaged the school system.  The evidence at the hearing reveals that parents who received the improper letters were "extremely upset" about the acceptance letters, as well as plaintiff's access to confidential information about their children.  In addition, principals at other elemen­tary schools testified that plaintiff's acceptance letters damaged their professional relationships with parents.  Plaintiff's supervisor testified that plaintiff's conduct harmed the entire district because scarce resources were devoted to redress plaintiff's violations of the rules governing the Options admissions.

The record further shows that plaintiff did not take immediate corrective action.  The Board points to evidence at the hearing which revealed that plaintiff failed to provide a credible explana­tion for how she obtained confidential identifying information and test scores of children at other schools and failed to provide a list of the parents she contacted.  Plaintiff also failed to provide the computer disk containing the student's names and addresses, claiming that the disk was lost.  The hearing officer found that plaintiff's claim lacked credibility.

Regarding plaintiff's charge of retaliation against two whistle-blower teachers, the Board points out that plaintiff distorts the facts and defines the law incorrectly.  The record shows that the two teachers, Tisza and Reardon, asked for transfers in August 1996, after they were discharged by plaintiff in July 1996.  The Whistle Blower Protection section prohibits retaliatory actions as follows:  "including by not limited to, reprimand, suspension, discharge, demotion, 
involuntary transfer
, harassment, or denial or promotion or voluntary transfer."  (Emphasis added).  105 ILCS 5/34-2.4c (West 1998).

The record also supports the hearing officer's finding that particular students were harmed by plaintiff's conduct regarding students requiring special services and who resided in a shelter.

The Board concluded that no warning was required 
because 
plaintiff was well aware that all of her above-described conduct was improper and that her retaliation against the two teachers was illegal.  The record discloses that plaintiff received many letters and notices to cease her above-described conduct.  Thus, the hearing officer found that even if plaintiff had been entitled to receive a warning, "the record is replete with warnings and admonitions * * * about a wide variety of plaintiff's activities which contravened Board/Region 6 policies, rules and regulations."

The Board compares the facts in this case to those in 
McCutcheon v. Board of Education
, 94 
 
Ill. App. 3d 993, 419 N.E.2d 451 (1981). There, a school principal was charged with, 
inter alia
:  threatening bodily harm to a school employee, failing to present acceptable performance appraisal objectives for the 1975-76 school year despite directives to do so, arriving at school indecently attired, failing to follow appropriate payroll procedures, assaulting a school janitor, failing to follow orders from the district superintendent regarding suspension of students, and improperly suspending students.  Evidence at a hearing revealed that the plaintiff established a pattern of disrespect for school procedure and policy despite repeated attempts by authorities to persuade the plaintiff to follow established procedures and policy.  This court upheld the Board's finding that the conduct of a principal was irremediable and that no warning was required because at the time of the proceedings, the School Code contained provisions directing that teachers be advised of the complaints against them, but did not include principals. The statute was later amended to include the warning of principals.  
McCutcheon
, 94 
 
Ill. App. 3d at 997.

Plaintiff responds that 
McCutcheon
 is distinguishable because there existed at that time no statutory requirement that the principal there be advised of the complaints against her in advance.  While this is true, it is apparent that the hearing officer in this case did, in fact, properly comply with  
Gilliand
 in determining the irremediability of plaintiff's conduct based on the evidence at the hearing. Plaintiff was not entitled to advanced warning of the charges.

Next, plaintiff contends that she was improperly terminated in 1998 based on conduct which occurred during her previous performance contract period, 1994-98.  Plaintiff argues that the Clay LSC unanimously voted to award her a new four-year performance contract for the 1998-2002 period and initiated no proceedings to terminate the 1998-2002 contract.  Plaintiff points out that the hearing officer found that the 1998-2002 contract was valid and held the hearing solely on the legality of plaintiff's dismissal from her position as the principal of Clay on June 22, 1998.

Plaintiff argues that article 34 of the School Code (popularly known as the Reform Act), authorizes the Clay LSC  to select and employ the principal of its choosing.  Citing 
Chicago School Reform Board of Trustees v. Martin
, 309 
 
Ill. App. 3d 924 (1999), plaintiff argues that the discretionary governmental power to hire and fire principals is the prerogative of the LSCs, not the Board.  Section 34-2.3 of the Reform Act provides:

"Each local school council shall have * * * the following powers and duties:

1. (A) To annually evaluate the performance of the principal of the attendance center using a Board approved principal evaluation form * * * ;

(B) to determine * * * whether the performance contract of the principal shall be renewed; and 

(C) to directly select * * * a new principal (including a new principal to fill a vacancy) - without submitting any list of candidates for that position to the general superintendent * * * ."  105 ILCS 5/34-2.3 (West 2000).

Plaintiff argues that she has at all times possessed a valid administrative certificate and that neither the State Board nor the Chicago Board of Education has initiated any proceeding to take that certificate away from her.  Thus, the Clay LSC was well within its rights to hire plaintiff.

The record shows that the contract signed by plaintiff and the LSC in January 1998 specifically provides that it "may be terminated by the Board of Education before expiration of the term stated in Section II ['commencing July 1, 1998 and ending June 30, 2002'] for * * * 
cause
 pursuant to 105 ILCS 5/34-85." (Emphasis added).  Section 34-85 of the School Code provides in pertinent part:

"The hearing officer shall within 45 days from the conclusion of the hearing report to the general superintendent findings of fact and a recommendation as to whether or not the teacher or principal shall be dismissed and shall give a copy of the report to both the teacher or principal and the general superintendent.  The board, within 45 days of receipt of the hearing officer's findings of fact and recommendation, shall make a decision as to whether the teacher or principal shall be dismissed from its employ.  * * * The decision of the board is final unless reviewed as provided in Section 34-85b of this Act."  105 ILCS 5/34-85b (West 1998).

Thus, the Board has the statutory authority to suspend plaintiff despite the fact that the State Board has not initiated proceedings to revoke her administrative certificate. The Board properly exercised its statutory authority and contractual rights to suspend plaintiff without pay and to dismiss her for cause.

Lastly, plaintiff contends that the dismissal provision of School Code is unconstitutional.  Plaintiff argues that section 34-85 violates her due process rights under both the Illinois and United States Constitutions (Ill Const. 1970, art. I, § 2; U.S. Const., amend. XIV).  This appears to be an issue of first impression.  

Plaintiff argues that since 1978, principals in Chicago have not been subject to removal without a prior written warning and following a hearing conducted by the State Board.  When Public Act 89-15 became effective on May 30, 1995 (Pub. Act 89-15, eff. May 30, 1995), plaintiff argues, the procedures in the School Code changed for the removal of Chicago principals:  charges and specifications against principals would no longer be approved by the school board, but instead by the general superintendent (CEO).  In addition, the decisions of hearing officers would no longer be final and subject to review pursuant to Administrative Review Law but, rather, would initially be reviewed by the Board. Plaintiff argues that the amendments to the School Code fail to provide any standard for review and fail to require any consideration by the Board of the administrative record created by the hearing officer or even the rationale of the hearing officer for his decision.  Rather, the statute merely authorizes the Board to make the final administrative decision on the discharge subject to the reviewing court's exception in situations where the Board and the hearing officer disagree.  See, 
e.g.
, 
Hearne v. Chicago School Reform Board
, 322 
 
Ill. App. 3d 467 (2001).

Plaintiff complains that section 34-85 provides a "built in system for abuse" in that it provided for the general superintendent, who initiated, approved and brought the charges for dismissal against her, and the attorney who represented the superintendent and prosecuted plaintiff, to be present with the Board and participate in the nonpublic deliberations of the Board in determin­ing plaintiff's fate without providing a similar opportunity to plaintiff or plaintiff's attorney.  Plaintiff also complains that section 34-85 allows the one preferring charges to "convince the ultimate decision maker" that his original judgment in charging the employee is correct, notwithstanding the record and findings of the hearing officer.

The State Board and Menacker respond that section 34-85 of the School Code is constitutional on its face because it establishes an administrative procedure by which a principal charged with misconduct may obtain a fair determination of the charges.  All statutes are presumed constitutional and the party challenging the statute bears the burden of clearly showing that the provision is unconstitutional.  
In re R.C.
, 195 
 
Ill. 2d 291, 745 N.E.2d 1233 (2001).  Our review of a challenge to the constitutionality of a law is 
de novo
.

A public employee who may be terminated only for cause has a property interest in his employment within the meaning of the due process guarantees of the United States and Illinois Constitutions.  
Cleveland Board of Education v. Loudermill
, 470 U.S. 532, 538-41, l84 L. Ed. 2d 494, 501-03, 105 S. Ct. 1487, 1491-93 (1985); 
Board of Education v. State Board of Education
, 292 
 
Ill. App. 3d 101, 113, 685 N.E.2d 413 (1997).  The employer may not terminate such an employee  - thereby depriving him of this property interest - without due process of law.  
Loudermill
, 470 U.S. at 541, 84 L. Ed. 2d at 503, 105 S. Ct. at 149; 
Board of Education
, 292
 
 Ill. App. 3d at 113.  

Due process requires balancing the employee's interest in retaining his job against the employer's interest in the expeditious removal of unsatisfactory employees and the avoidance of administrative burdens. See 
Loudermill
, 470 U.S. at 542-45, 84 L. Ed. 2d at 503-06, 105 S. Ct. at 1493-95.  In light of these competing concerns, due process requires that a tenured public employee facing termination be afforded notice of the charges against him and the opportunity for a hearing appropriate to the nature of the case - a hearing prior to termination at a minimum.  
Loudermill
, 470 U.S. at 542-46, 84 L. Ed. 2d at 503-06, 105 S. Ct. at 1493-95.  The pretermina­tion hearing must provide an explanation of the employer's evidence and an opportunity for the employee to present his side of the story:  "To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee."  
Loudermill
, 470 U.S. at 546, 84 L. Ed. 2d at 506, 105 S. Ct. at 1495.  Due process is satisfied if the employer makes a final decision based on a full evidentiary hearing, subject to judicial review.  
Loudermill
, 470 U.S. at 545, 547-48, 84 L. Ed 2d at 506, 507, 105 s. Ct. at 1495, 1496; 
Board of Trustees of Community College District 508 v. McKinley
, 160 Ill. App. 3d 916, 923, 513 N.E.2d 951 (1987).

Section 34-85 of the School Code, which establishes the procedure by which the School Board may remove a principal for cause, complies with the above constitutional requirements of due process.  Section 34-85 requires that to remove a principal for cause, the general superin­ten­dent of schools must first approve charges and specifications against the principal, and a written notice of the charges must be served upon the principal within 10 days thereafter.  A hearing must be held if, within 10 days of receiving the written notification, the principal requests a hearing in writing. 105 ILCS 5/34-85 (West 1998).

The State Board then provides the principal and the general superintendent a list of five prospective impartial hearing officers.  Each person on the list must be accredited by a national arbitration organization and must have had a minimum of five years of experience as an arbitrator in cases involving labor and employment relations matters in the educational field.  The parties alternatively strike one name from the list until only one name remains.  

Once a hearing officer is selected, the hearing officer holds a hearing, makes findings of fact and issues a recommendation to the general superintendent.  The principal may attend the hearing with counsel, cross examine witnesses, offer his or her own witnesses or evidence, and present defenses to the charges.  All testimony at the hearing must be under oath and a record of the proceedings must be kept.  Within 45 days of the conclusion of the hearing, the hearing officer must report to the general superintendent his findings of fact and his recommendation as to whether the principal shall be dismissed, and a copy of the report must be sent to the principal.  Within 45 days of receiving the hearing officer's findings of fact and recommendation, the School Board "shall make a decision as to whether the teacher or principal shall be dismissed from its employ." 105 ILCS 5/34-85b.  The decision of the School Board is final, but an aggrieved principal may seek judicial review under the Administrative Review Law. 

As outlined above, section 34-85 complies with all of the requirements of due process as set forth in 
Loudermill
 and its progeny.  Plaintiff fails to show that the statutory scheme is facially invalid.  In challenging the constitutionality of section 34-85, plaintiff is required to show that "'no set of circumstances exists under which [the statute] would be valid.'"  
In re R.C.
 195 Ill. 2d at 297, quoting 
In re C. E.
, 161 Ill. 2d 200, 210-11 (1994). Section 34-12 provides for "participation in meetings by superintendent and attorney," as follows:

"The general superintendent of schools and the attorney may be present at all meetings of the board and shall have a right to take part in its discussions and deliberations, but shall have no vote."  105 ILCS 5/34-12 (West 1998).

This section does not require the presence of the general superintendent or the prosecuting attorney, but does ensure that they have no vote on the School Board's decisions.  The presence of these individuals in the hearing does not render section 34-85 unconstitutional.  In addition, plaintiff does not claim that Vallas or the School Board's attorney were in fact present when the School Board considered the recommendation of the hearing officer.

The State Board also refutes plaintiff's contention that the hearing procedures violated due process because Vallas brought the charges, appointed the prosecutor, and made the ultimate finding of violations.  This argument was rejected in 
Crystal Food & Liquor, Inc. v. Howard Consultants, Inc.
, 276 
 
Ill. App. 3d 504, 658 N.E.2d 1279 (1995).  There, the Director of the Department of Public Aid brought administrative charges against the plaintiff, a food vendor in a federal welfare program.  The Director signed the notice of violation and appointed a prosecutor, hearing officer and deputy director to review the hearing officer's findings.  This court found that that did not mean that "the Director alone brought the initial charges, prosecuted the case, presided over the hearing and made the ultimate decision." 
Crystal Food
, 276 
 
Ill. App. 3d at 509. This court concluded that there was no evidence of impartiality and that "due process is not denied where investigative, judicial and prosecutorial functions are combined in one agency."  
Crystal Food
, 276 
 
Ill. App. 3d at 509.

The State Board also addresses plaintiff's claim that section 34-85 violates due process because it provides an inadequate procedure by which the Board reviews the hearing officer's recom­mendation.  Plaintiff complains that section 34-85 does not require that the Board be provided with the record developed before the hearing officer, review that record, receive a copy of the hearing officer's decision, or make its own findings.  Plaintiff fails to show that there is "no set of circumstances" under which section 34-85 is valid on its face because plaintiff has not shown that section 34-85 prohibits the above listed actions. Thus, plaintiff has not shown that these actions can never occur under the statute.

Plaintiff argues that in her case, the Board failed to make any findings and that its decision to discharge her is therefore unreviewable.  The record does not support this contention.  The record shows that the Board adopted the recommended decision of the hearing officer as its own.

Plaintiff has therefore failed to show that section 34-85 is unconstitutional.

For all of the reasons set forth above, we affirm the judgment of the circuit court.

Affirmed.

GREIMAN and QUINN, JJ., concur.