NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 12, 2007
Decided June 28, 2007

**Before**

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 06-2343

| | |
|---|---|
| THOMAS FLANINGAM, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Northern District of Illinois, Western Division |
| v. | No. 03 C 50172 |
| COUNTY OF WINNEBAGO, JIM KELLY, in his individual capacity, and MICHELLE SELL, in her individual capacity, *Defendants-Appellees*. | Philip G. Reinhard, *Judge* |

**O R D E R**

Thomas Flaningam was fired from his job as Officer Supervisor at the Department of Animal Control for Winnebago County, Illinois ("the County"). He sued the County and two supervisors, claiming in relevant part that he was deprived of his job without due process of law. The defendants moved for summary judgment, arguing that Flaningam lacked a protected property interest in continued employment. Flaningam responded that he had a property interest in his job by virtue of language in an employee handbook and personnel regulations codified in Chapter 62 of the Winnebago County Code. The district court rejected

Flaningam's argument and granted summary judgment for the defendants. On appeal, Flaningam argues primarily that the County's personnel code allows the County to terminate employees only for cause, thereby giving him a property interest in his job. Because we do not read the ordinance as limiting the County's discretion to terminate its employees, we affirm the district court's judgment.

## I. Background

Flaningam worked for the County's Department of Animal Services for nearly fifteen years, beginning in 1988 when he was hired as a kennel worker. He was soon promoted to Animal Services Officer, and in April 2001 he was appointed by the Director of Animal Services to the position of Animal Services Supervisor. Shortly thereafter, the director left the department and was replaced by Michelle Sell. The Department of Animal Services faced systemic problems such as poor organization and low employee morale and had an unsatisfactory reputation within the local court system. Sell, in cooperation with Jim Kelly, the Human Resources Director, was charged with reforming the department.

After Sell became the director in October 2001, she and Kelly each had conversations with Flaningam about how to improve the department's performance and morale. At various times Sell approached Flaningam about issues such as revising the officers' procedural manual, improving the scheduling system, and providing better oversight of the paperwork filed by officers. Sell was unsatisfied with Flaningam's progress on these fronts. Sell also confronted Flaningam after he violated department policy by allowing a news reporter to ride along with an officer without prior approval and using (and allowing officers to use) county-provided cellular phones for personal phone calls. Kelly approached Flaningam about the need to schedule more staff meetings for the officers and to improve officer training.

Sell eventually concluded that Flaningam lacked the necessary judgment and skills to be an effective supervisor. On April 26, 2002, she and Kelly met with Flaningam and fired him due to "his inability to function as Officer Supervisor, and the lack of indication that he intended to improve his performance." Flaningam was shocked that he was fired "without warning" after fifteen years of service. He asserts he "was never told that he had done anything wrong, as he had never been given a verbal warning, had never been written up and never been suspended." He later learned that he was replaced as supervisor by an employee of the county sheriff's department who lacked any experience in the field of animal control.

Flaningam sued the County, Sell, and Kelly under 42 U.S.C. § 1983, alleging he was fired for purely political reasons in violation of the First and Fourteenth Amendments, and that he was deprived of his job without due process in violation of the Fourteenth Amendment. The defendants moved for summary judgment,

which the district court granted as to the first claim but denied as to the second. The court asked the parties to provide "evidence whether the personnel code was adopted as an ordinance of the County" and if so, to address whether its language "creates a property interest in plaintiff's job by prohibiting him from being fired except for cause." Ultimately the district court granted summary judgment for the defendants on the due process claim; the court concluded that "[n]othing in the ordinance at issue provides that discharge may only be for cause," and so the code did not create a property right that entitled Flaningam to due process. The court noted that the code sets forth certain procedures that the County did not follow, but reasoned that absent a property interest in continued employment, the failure to follow established procedures in itself does not violate due process.

## II. Analysis

In order to prevail on his due-process claim, Flaningam must show that he had a constitutionally protected property interest in his job and that he was deprived of that interest without due process of law. *Moss v. Martin*, 473 F.3d 694, 700 (7th Cir. 2007). The parties agree that Flaningam was afforded no process and dispute only the existence of a property interest. Where a plaintiff alleges a due-process violation based on the termination of his employment, we look to state law to determine whether the plaintiff has a property interest in keeping his job. *Id.*; *Draghi v. County of Cook*, 184 F.3d 689, 692 (7th Cir. 1999). In Illinois, employment without a fixed duration is presumed to be at-will, *Duldulao v. Saint Mary of Nazareth Hosp. Ctr.*, 505 N.E.2d 314, 317 (Ill. 1987), unless the employee can point to "a specific ordinance, state law, contract, or understanding limiting the ability of the [employer] to discharge him," *Ertl v. City of DeKalb*, 708 N.E.2d 574, 576 (Ill. App. Ct. 1999) (citing *Faustrum v. Bd. of Fire & Police Comm'rs,* 608 N.E.2d 640, 641 (Ill. App. Ct. 1993)); *see Miller v. Ret. Bd. of Policemen's Annuity*, 771 N.E.2d 431, 437 (Ill. App. Ct. 2001). Under Illinois law a public employee who may be terminated only for cause has a property interest in continued employment. *Prato v. Vallas*, 771 N.E. 2d 1053, 1064 (Ill. App. Ct. 2002).

Here, Flaningam argues that personnel regulations contained in Chapter 62 of the Winnebago County Code created the requisite property interest.[1] The

---

[1]Flaningam does not develop and thus waives the contention that a policy or practice of the County established a property interest in continued employment. *E.g., Murdock & Sons Constr., Inc., v. Goheen Gen. Constr., Inc.*, 461 F.3d 837, 841 (7th Cir. 2006). Although property interests may be created by "mutually explicit understandings," *Crull v. Sunderman*, 384 F.3d 453, 464 (7th Cir. 2004), Flaningam fails to describe any particular "policy" or "practice" supporting the existence of a

(continued...)

provisions Flaningam cites, however, do not expressly limit the County's authority to discharge its employees only for cause.  For instance, Flaningam cites § 62-291(b), which states: "In general, any action or attitude which adversely affects job performance or the reputation of the county government may be cause for disciplinary action."  This provision does not limit the County's discretion or create an assurance of continued employment; instead, it simply states a general principle that "any action or attitude" that adversely affects job performance or the County's reputation "may be" grounds for discipline.  We have previously addressed similar language in an employee handbook and concluded that it was too "weak" to rebut the presumption of at-will employment.  *Border v. City of Crystal Lake*, 75 F.3d 270, 274 (7th Cir. 1996) (employee handbook language stating that employees were subject to discipline "at any time, as may be appropriate for conduct or performance," does not create a property interest in continued employment).  Moreover, we have held that permissive language like that used in § 62-291(b) ("*may* be cause") generally does not create an enforceable property right.  *See Moss*, 473 F.3d at 701; *Flynn v. Kornwolf*, 83 F.3d 924, 927 (7th Cir. 1996); *Lashbrook v. Oerkfitz*, 65 F.3d 1339, 1347 (7th Cir. 1995).

Flaningam also relies on § 62-292 of the code, which he argues imposes a "mandatory discipline process" that limits the County's discharge authority because it specifies that "formal disciplinary actions will be processed" in the manner outlined in the ordinance.  But Flaningam's entitlement to disciplinary procedures, mandatory or otherwise, does not bear on whether he has a property interest in his job.  *See Montgomery v. Stefaniak*, 410 F.3d 933, 939 (7th Cir. 2005); *Moulton v. Vigo County*, 150 F.3d 801, 805 (7th Cir. 1998).  An employer's failure to comply with its disciplinary procedures may be actionable, but not as a federal constitutional claim.  *Garcia v. Kankakee County Hous. Auth.*, 279 F.3d 532, 535 (7th Cir. 2002); *Shegog v. Bd. of Ed. of City of Chi.*, 194 F.3d 836, 837-38 (7th Cir. 1999).  For the same reason, the existence of a formal grievance procedure—which Flaningam never invoked—does not itself establish a property interest; Flaningam "must show entitlement to the job, not just to the procedures." *Border*, 75 F.3d at 275.

Flaningam next asserts that § 62-292(4), pertaining to suspensions, demonstrates that he had a property interest in his job.  That provision states that "a department head may as a disciplinary action suspend without pay any employee for cause" and lays out the procedures for doing so.  The words "for cause," however, are not repeated in the next subsection, which concerns discharges.  Flaningam argues that a "for cause" limitation must be implicit in the discharge provision

---

[1](...continued)
mutual understanding between the parties.

because "it would make no sense to require a showing of cause when suspending an employee . . . while not requiring a showing of cause upon discharges." We reject this strained reading of the ordinance. In any event, as we have already noted, the use of permissive language ("a department head *may* . . . suspend") does not create a property interest in continued employment. *See Moss*, 473 F.3d at 701 (manual stated an employee "may be discharged for cause"); *Lashbrook*, 65 F.3d at 1347 (handbook stated that "Department Heads, with the approval of the Director, may dismiss any employee for just cause").

Finally, Flaningam relies on the code's distinction between employees with "probationary"status and those with "permanent" status to support his argument that the ordinance gives him a property interest in his job. Flaningam asserts that an employee with "permanent" status cannot be an at-will employee because "permanent" implies a lasting engagement. The personnel code does not define "permanent" employee; the term is used only in juxtaposition to "probationary" employees to distinguish between those who may avail themselves of the grievance process and receive certain employment benefits such as insurance coverage. In any case, that the code distinguishes between "probationary" and "permanent" employees for some purposes does not establish a mandatory limitation on the County's authority to discharge.

Flaningam has not identified any provision in the Winnebago County Code that expressly limits the County's authority to terminate its employees only for cause. Accordingly, he did not have a property interest in continued employment with the Department of Animal Services. We AFFIRM the judgment of the district court.